(File No. 7131)

K. H. KNOWLTON, Respondent, v. MAXINE COYE, Leo Coye, Emma Coye and Cavalier County, a public corporation, Appellants.

(37 NW2d 343)

480

Opinion filed April 14, 1949.

*H. C. DePuy* and *J. M. Snowfield,* for appellants.
*Robert Q. Price,* for respondent.

MORRIS, J. The plaintiff brought this action to quiet title to the following land situated in Cavalier County, North Dakota, being the NE¼ of Section 32 and the SE¼ of Section 29, both in Township 159, Range 60. The plaintiff also seeks to recover the value of the use and occupation of these lands from the county for 1942 and from the Coyes for years 1943, 1944, and 1945. Cavalier County answered separately and set up acquisition of title by it through tax deed proceedings. The defendants Maxine Coye and Emma Coye by their answer deny the title of the plaintiff and claim a fee simple title in themselves. They also allege that Maxine Coye acquired title to the SE¼ of Section 29 by purchase and tax deed from Cavalier County, and that Emma Coye acquired title to the NE¼ of Section 32 in like manner. They further allege that the action was not commenced within three years after the issuance of tax deeds and that it is barred under the laws of the State of North Dakota. For final defense, they allege that the plaintiff has waived his right to redeem the premises and has consented in writing to the taking of tax deeds. They ask the court to dismiss plaintiff's complaint and quiet title in themselves. From a judgment quieting title in the plaintiff the defendants appeal and demand a trial de novo.

We will first consider the title of the plaintiff and his right to maintain the action, which the defendants challenge upon the ground that the deed under which the plaintiff claims title

is champertous and therefore void as to them. On May 1, 1919, Louis H. Aaberg and wife gave a mortgage to John R. Anderson covering both quarter sections of land. It was recorded August 12, 1919. On August 30, 1919 Anderson assigned the mortgage to Charles D. Knowlton, who in turn on October 29, 1919, assigned it to the Knowlton State Bank, Freeport, Illinois. This mortgage was foreclosed in 1929 and on May 23, 1930, a sheriff's deed was issued to the Knowlton State Bank. All of these instruments are of record. On November 18, 1935 the Knowlton State Bank gave a quit claim deed to Ida M. Knowlton. On September 20, 1939 she gave separate quit claim deeds to these quarter sections to Kenneth H. Knowlton, the plaintiff. These three instruments are unrecorded.

On September 8, 1919 there was placed of record a warranty deed from Louis H. Aaberg and wife to John R. Anderson. It will be noted that the date of this recording is after the assignment by Anderson of the mortgage above referred to. On September 8, 1919 Anderson deeded the land to John J. Power, who on the same day executed a mortgage to Anderson. This mortgage was assigned to Wm. Ross, who foreclosed the mortgage and received a sheriff's certificate of mortgage sale on April 1, 1922. This certificate was assigned to The First National Bank of Edmore which received a sheriff's deed to the property on March 3, 1926. On March 15, 1926 that bank issued a special warranty deed to Emma Coye, one of the defendants. On the same date, she and Maxine Coye, her husband, executed a mortgage to the Knowlton State Bank. The following day, March 16, Emma Coye and Maxine Coye issued a warranty deed to The First National Bank of Edmore, which was recorded April 6, 1926. These are all of the material instruments appearing of record or introduced in evidence pertaining to the title to this property except those involved in tax deed proceedings, which will be noted and discussed later.

Emma Coye testified that she and her husband bought the land from the Edmore Bank in 1926, but the nature of the instrument of title is not described. They lived on a nearby homestead and used the land in question for tillage and pasture.

Maxine Coye gave substantially the same testimony. The evidence in this respect is wholly oral and is otherwise uncorroborated.

The claim that the plaintiff's deed is champertous rests upon § 12–1714, Rev Code ND 1943, which provides,

"Every person who buys or sells or in any manner procures, or makes or takes any promise or covenant to convey any pretended right or title to any lands or tenements, unless the grantor thereof or the person making such promise or covenant has been in possession, or he and those by whom he claims have been in possession of the same, or of the reversion and remainder thereof, or have taken the rents and profits thereof, for the space of one year before such grant, conveyance, sale, promise, or covenant is made, is guilty of a misdemeanor."

This statute renders void as against persons in adverse possession under a claim of title certain conveyances by grantors who have not been in possession or taken rent for the space of a year prior thereto. Galbraith v. Payne, 12 ND 164, 96 NW 258; Burke v. Scharf, 19 ND 227, 124 NW 79; Sailer v. Mercer County, 75 ND 123, 26 NW2d 137. In order to successfully challenge the validity of a conveyance under this rule it must appear that at the time of the grant the land was in actual possession of another person who then claimed it under a claim of title adverse to that of the grantor. The Coyes were undoubtedly in possession at the time the plaintiff received his deeds. The decisive question is did the Coyes then claim the land under a title adverse to that which passed to the plaintiff by virtue of his quit claim deeds. If they did, that title is void as against the Coyes. To determine the nature of the right under which the Coyes claimed possession we go back to Louis H. Aaberg, who is the common source of title of both the plaintiff and the Coyes. On May 1, 1919 he gave the mortgage which was a first lien on the premises and through foreclosure vested title in the Knowlton State Bank. That bank conveyed its title to Ida M. Knowlton, who in turn conveyed to the plaintiff. When the mortgage was foreclosed and sheriff's deed issued it conveyed to the purchaser the same title that the mortgagor,

Aaberg, possessed at the time of the execution of the mortgage. North Dakota Horse & Cattle. Co. v. Serumgard, 17 ND 466, 117 NW 453, 29 LRANS 508, 138 Am St Rep 717; Bechard v. Union County, 71 SD 558, 27 NW2d 591.

The mortgage from Aaberg to Anderson was a first lien upon the land which was pledged as security for the debt. The title and right to possession remained in the mortgagor. McClory v. Ricks, 11 ND 38, 88 NW 1042; First Nat. Bank of Waseca v. Paulson, 69 ND 512, 288 NW 465; Federal Farm Mortg. Corp. v. Berzel, 69 ND 760, 291 NW 550. Aaberg's title, subject to the first mortgage, passed to Anderson and thence to John J. Power, who gave a mortgage on the land back to Anderson. This was a second mortgage. It passed by assignment to Wm. Ross, who foreclosed it and obtained a sheriff's certificate of mortgage sale. The certificate was assigned to The First National Bank of Edmore and that bank obtained a sheriff's deed. This deed conveyed to the Edmore Bank the title of Aaberg, the original mortgagor, subject to the first mortgage then held by the Knowlton State Bank.

The Coyes, according to their testimony, obtained their title either from John R. Anderson or The First National Bank of Edmore. Emma Coye received a special warranty deed from that bank on March 15, 1926. For the purposes of this decision it is immaterial whether their claimed purchase of the land was from Anderson or the bank. Both appear in the chain of title that traces directly back to and is dependent upon the title of Louis H. Aaberg who gave the first mortgage. Under the record in this case the Coyes, at best, obtained the title that Aaberg had after he had executed the first mortgage. Any interest they acquired in the land was subject to the lien of that mortgage. They were in the same position as the original mortgagor. mortgagor.

In Hodgdon v. Heidman, 66 Iowa 645, 24 NW 257, it is said, "It must be regarded as the settled rule of this state, which is in accord with the current of decisions elsewhere, that a mortgagor, or the grantee of the mortgagor, or a subsequent incumbrancer, in possession of land, does not hold adversely to the mortgagee."

The rule thus expressed is based upon the theory that the possession of the mortgagor is presumed to be amicable to and in subordination to the mortgage. Romanchuk v. Plotkin, 215 Minn 156, 9 NW2d 421; Bur v. Bong, 159 Wis 498, 150 NW 431.

We have not overlooked the fact that the Coyes were in possession both before and after the foreclosure of the first mortgage, and that the deed to the plaintiff was given after foreclosure and while the Coyes were still in possession. The bare fact of foreclosure does not alter the situation with respect to the adverse possession of the Coyes. The record shows no act on their part or other fact that indicates a change of their status. Their possession continued in the same manner as it had existed before foreclosure. The title of the Knowlton State Bank acquired through the foreclosure proceedings was the title of Aaberg the original mortgagor and title holder, against which the Coyes acquired no adverse title. Their possession therefore was not adverse to the title of subsequent grantees of the Knowlton State Bank. Barley v. Roosa, 35 NY SR 898, 13 NYS 209; Lowry v. Tillany, 31 Minn 500, 18 NW 452; Romanchuk v. Plotkin, 215 Minn 156, 9 NW2d 421, supra; Bur v. Bong, 159 Wis 498, 150 NW 431, supra; Doyle v. Mellen, 15 RI 523, 8 A 709.

The titles of both the plaintiff and the Coyes are derived directly from Aaberg. These titles are not hostile to each other or adverse within the meaning of the rule against champertous conveyances. Finn v. Lally, 1 App Div 411, 37 NYS 437.

Lest it be suggested that our holding here is inconsistent with Brynjolfson v. Dagner, 15 ND 332, 109 NW 320, 125 Am St Rep 595, we would point out that the court in that opinion impliedly recognizes the general rule that a mortgagee in possession does not hold a title hostile to the mortgagor by stating that

"There is a wide distinction between an actual mortgagee in possession and one who in equity may be dealt with as such in order to afford equitable relief. The fiction by which an adverse claimant is deemed a mortgagee in possession is resorted to and applied after the adverse claim is found to be invalid, but the defeated claimant is nevertheless entitled to equitable relief. In short, in order to place appellants in the position of mortgagees in possession, we must first decide that their adverse

claim is invalid. It will be seen, then, that respondent's argument is utterly illogical. It not only virtually admits the adverse possession, which is the very fact which it seeks to disprove, but also assumes that plaintiff can question the validity of the adverse claim, which is the very thing which Section 7002 (Section 12–1714, RCND 1943) forbids one in his position to do."

That case may be further distinguished upon its unusual facts whereby it appears that a mortgagee assigned the mortgage and subsequently foreclosed it in spite of his assignment, and purchased the property at the foreclosure sale. He then conveyed the property by warranty deed to Dagner, who paid for it in good faith and went into possession. The original owner and mortgagor had abandoned the property and moved out of the State. Some eight or nine years later he gave a deed to the plaintiff.

"It is conceded that Libak (the original owner) had not asserted any right to the land since he abandoned it until he gave the deed in question, and the proof is conclusive that he never intended to assert any right to the land until he was solicited to execute that instrument. The plaintiff had not only constructive but actual notice of Dagner's adverse claim before he took the Libak deed."

There is nothing in the record before us to indicate that the Knowlton State Bank ever intended to abandon the property or its rights therein. The failure to pay taxes which was prevalent throughout the State during the depression years, does not give rise to an implication of abandonment.

A further reason for holding that the plaintiff's deeds were not champertous arises from these facts. On March 16, 1926 Emma Coye and Maxine Coye, her husband, gave a warranty deed conveying both quarter sections to the First National Bank of Edmore. On the previous day they had executed a mortgage to the Knowlton State Bank which already held the first mortgage on the property. Thus the deed conveyed the property subject to two mortgages. The title which the Coyes conveyed passed to the Knowlton State Bank upon the foreclosure of the first mortgage. The Coyes continued in possession, but the in-

ference to be drawn from these transactions is that their possession was amicable and not hostile to the rights of the mortgagee under the mortgage which they had given and not adverse to the title that they had conveyed by the warranty deed. 10 Am Jur, Champerty and Maintenance, § 20; 14 CJS, Champerty and Maintenance, § 32; Behrens v. Crawford, 32 Ky LR 1281, 108 SW 288.

We now consider the tax deed proceedings and claim of the Coyes to title through deeds from Cavalier County. On December 8, 1931 the NE¼ of Section 32, was sold to Cavalier County for delinquent taxes assessed in 1930. On December 11, 1934, the SE¼ of Section 29 was sold to the county for delinquent 1933 taxes. On January 27, 1939 notices of expiration of period of redemption were issued by the county auditor with respect to these taxes. Included in the amount claimed to be due the county were subsequent taxes that had been delinquent for less than three years prior to the date of the notice. This inclusion rendered the notices void. Kelsch v. Miller, 73 ND 405, 15 NW2d 433, 155 ALR 1186; Baeverstad v. Reynolds, 73 ND 603, 18 NW2d 20. Further tax deed proceedings regarding these tracts will be considered separately.

On May 28, 1940 the county auditor issued a notice of expiration of the period of redemption based upon a sale of taxes on the NE¼ of Section 32 to Cavalier County on December 13, 1932. Service appears to have been made in accordance with Chapter 235, SLND 1939, with this exception. In the notice published in the official newspaper of Cavalier County the name of the record title owner was erroneously given as the Milton State Bank instead of the Knowlton State Bank. The abstract of title discloses a tax deed issued to Cavalier County covering the NE¼ of Section 32, dated March 1, 1940. This deed presumably was issued pursuant to the first notice of expiration of the period of redemption which was void for the improper inclusion of subsequent taxes. It appears to be the only tax deed that was issued on the NE¼ of Section 32. On April 23, 1942 Maxine Coye leased this quarter of land from Cavalier County for one-fourth share of the crop. He paid the county for this share

$315.72 and $22.82 Soil Conservation payment. This lease expired November 1, 1942. On April 7, 1943 the Board of County Commissioners approved the sale of this quarter to Emma Coye and Leo Coye. On the following day a written contract was entered into between Emma Coye and the county of Cavalier for the sale of this property for $1000, $250 in cash and the balance in three equal annual installments, with interest on deferred payment at 4% per annum. On October 23, 1945 a deed was issued by Cavalier County to the defendant, Emma Coye.

At the time of the sale of this property by the county, § 1, Ch 121, SLND 1943 was in effect. Under it the sale of land acquired by the county through tax deed proceedings must be held in abeyance for a period of thirty days and notice of the impending sale given to the former owner. At no time prior to the execution of the contract or the subsequent deed did Cavalier County give the required notice. This defect also appears in connection with the title of the SE¼ of Section 29 and will be considered further in connection with our discussion of that title.

The trial court found, in effect, that both notices of expiration of the period of redemption were defective and void. The first included subsequent delinquent taxes which had been delinquent less than three years prior to the service of the notice. When the second notice was published the record title owner was erroneously given as the Milton State Bank. Under the provisions of § 235, SLND 1939 the county auditor is required to give notice of the expiration of the period of redemption by publication. This publication is for the protection and benefit of all persons who may have an interest in the property about to be sold. The form of notice as prescribed by the statute recites,

"Opposite each description of real estate appears the name of the record title owner thereof as it appears by the records in the office of the register of deeds of such county . . . ."

Thus the property being sold can be identified by the published description and by the name of the record title owner. The statute requiring notice of the expiration of the period of redemption must be strictly complied with in order to terminate the owner's right to redeem. Messer v. Henlein, 72 ND 63, 4 NW2d

587. Valid tax titles can be acquired only after full compliance with the provisions of law intended for the protection of those having the right to redeem. State ex rel. State Bank of Streeter v. Weiler, 67 ND 593, 275 NW 67. The insertion in the published notice of the wrong name as that of the record title owner is fatal to the validity of the notice.

The respondent points out that this action was not commenced until more than three years after the issuance of the tax deed. The defendants seek to invoke the three year limitation set forth in § 57–4511, Rev Code ND 1943. This limitation does not protect a tax deed that is void on its face or which though regular on its face is void because of jurisdictional defects in the proceedings which led to its issuance. Hodges v. McCutcheon, 72 ND 150, 5 NW2d 83. The failure to give the notice of expiration of the period of redemption required by statute is jurisdictional and invalidates a tax deed issued pursuant to such notice. Werner v. Werner, 74 ND 565, 23 NW2d 757; Baird v. Zahl, 58 ND 388, 226 NW 549. We agree with the trial court that both notices of expiration of the period of redemption were fatally defective and void and that the tax deed issued to Cavalier County is likewise void. Title to the NE¼ of Section 32 did not pass to the county. No title therefore passed to the defendant Emma Coye by virtue of the county's deed to her.

We now turn to a consideration of title to the SE¼ of Section 29. Two notices of expiration of the period of redemption were likewise issued to this tract. The first notice was void because of the inclusion in the amount claimed to be due of subsequent delinquent taxes that had become delinquent within three years prior to the service of the notice. The second notice dated May 28, 1940 is conceded to have been issued and served in conformity with the applicable statute, Ch 235, SLND 1939. It gave notice that unless redemption was made on or before the first day of October after the date of the notice, tax deeds would be issued to the county. No redemption was made within the time prescribed by the notice and the law. The rights of redemption were therefore extinguished. A tax deed, however,

was issued to the county prematurely, on October 1, 1940, which was the last day for redemption. This deed being issued without authority is void but its issuance does not appear to have interfered in any manner with the exercise of plaintiff's right to redeem. He does not claim to have known that it had been issued until long after the period of redemption expired. He could not have been misled or prejudiced by it. After October 1, 1940 the county became entitled to a tax deed as a matter of right. Its issuance was but a ministerial act on the part of the county auditor. Title to the SE¼ of Section 29 vested in the county. Buman v. Sturn, 73 ND 561, 16 NW2d 837.

The title which the county received upon the expiration of the period of redemption was subject to the right of the owner to repurchase the property under the provisions of Ch 238, SLND 1939, Ch 286, SLND 1941 and Ch 121 SLND 1943, as long as the title remained in the county. The minutes of the Board of County Commissioners of Cavalier County show that on April 7, 1943 the sale of the SE¼ of Section 29 to Maxine Coye was approved and on April 10 a written contract was entered into between the county and the purchaser for the sale of this property for $1000 payable $250 in cash and the balance in three equal annual installments.

Prior to the sale of the SE¼ of Section 29 to Maxine Coye Ch 121, SLND 1943 became effective. Section 1 of this Chapter provides: (see also § 57–2818, Rev Code ND 1943).

"All private sales of real property made between the annual November sales, shall be made upon the same terms and conditions as sales are authorized to be made at the November sale, except that when farm lands are sold after the first of January such sales will be made subject to any existing farm leases of said lands for the year in which such sales are made, and provided further that if such property is sold at private sale to any other person than the former owner his executor or administrator or any member of his immediate family, such sale shall be held in abeyance for a period of thirty (30) days from the date of notice to the former owner his executor or administrator or any member of his immediate family, given

by registered mail by the county auditor, to his last known post office address or if the post office address is not known, then to the post office nearest the land during which time the former owner his executor or administrator or any member of his immediate family may make redemption by payment in full of delinquent taxes, penalty and interest charged against such real estate or the proposed sale price, whichever may be the lesser. Provided, further that if no redemption is made by the former owner his executor or administrator or any member of his immediate family during said period of thirty (30) days, then the sale shall be final and the purchaser shall be entitled to a deed as provided herein."

We have held that the right to repurchase under the provisions of Ch 286, SLND 1941 is an additional privilege granted by the legislature as a matter of grace, and that proceedings terminating that privilege should not be viewed with the same strictness that applies to the termination of the owner's equity of redemption. Horab v. Williams County, 73 ND 754, 19 NW2d 649. The right to repurchase is nevertheless a valuable one and cannot be ignored. Substantial compliance with statutory procedure is necessary in order to terminate that right and until it has been terminated the right continues to exist. Coverston v. Grand Forks County, 74 ND 552, 23 NW2d 746. The trial court found and the record clearly shows that there has been no compliance with § 1, Ch 121, SLND 1943. The attempted conveyance to Maxine Coye is therefore invalid. Willard v. Ward County, 72 ND 291, 6 NW2d 566.

The appellants assert that the plaintiff is estopped from challenging the tax title of the county and the deeds to the Coyes because of correspondence that he had with the county auditor in 1940 and it is argued that because of this correspondence the plaintiff waived any right to the thirty days notice of a sale by the county at private sale. On February 24, 1940 the plaintiff wrote the county auditor asking for a waiver of penalties and interest on the delinquent taxes. He represented in the letter that while he held the title, the property actually belonged to an elderly woman and stated,

"There is not a great deal of equity at present in this land above taxes, but I am anxious to save what I can for the owner.

"I would appreciate anything you can do for her in this matter."

In reply the county auditor sent the plaintiff a statement of taxes due on which he typed a note which said in part,

"The above statement shows the amount of taxes to be paid without interest or penalty which I will agree to accept yet for another ten days, . . . ."

On March 9, 1940 the plaintiff wrote the county auditor thanking him for deferring collection of the penalties and stating,

"However, it will be impossible for the owner of the piece to pay up the taxes. We will make an endeavor to sell the piece in the meantime, although this may be impossible."

This correspondence does not support the appellant's contention of estoppel. It is not a waiver of the service of a valid notice of expiration of the period of redemption, required by Ch 286, SLND 1941, or the notice required by § 18, Ch 286, SLND 1941 as amended by § 1 of Ch 121, SLND 1943, to be given the former owner before the consummation of a private sale.

From the record which we have reviewed at length because of its many complications, we conclude that the plaintiff became the owner of the legal title to both quarter sections by virtue of quit claim deeds from Ida M. Knowlton on September 20, 1939. These deeds were not champertous and the plaintiff is entitled to maintain an action to quiet title. § 32–1701, Rev Code ND 1943. Adams v. Hartzell, 18 ND 221, 119 NW 635.

The trial court correctly found that the title to the NE¼ of Section 32 was in the plaintiff subject to the unpaid taxes, penalties and interest due to Cavalier County, and the title to the SE¼ of Section 29 was in Cavalier County subject to the right of the plaintiff as former owner to repurchase. The plaintiff made a deposit to cover and pay taxes, interest, penalties and costs of tax deed proceedings. No question is raised on this appeal with reference to the application made by

492

the trial court of this deposit, or the provisions made by him in adjustment between the parties of rents paid, value of the use and occupation of the premises, and taxes paid by the Coyes. The judgment appealed from is affirmed.

NUESSLE, Ch. J., BURKE and CHRISTIANSON, JJ., and BRODERICK, District J., concur.

BURR, J., did not participate.